UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 20-30008-MGM |
| | ) | |
| DAVID CECCHETELLI, | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by Rachel S. Rollins, United States Attorney, and Laura J. Kaplan, Assistant United States Attorney for the District of Massachusetts, submits this sentencing memorandum in support of the government's position on sentencing. Defendant is seeking a time served sentence and the government is seeking a sentence at the low end of the guideline sentencing range.

## FACTUAL BACKGROUND

Defendant was arrested as part of a large-scale state-wide investigation into the Latin Kings in Massachusetts. The investigation was spearheaded by the FBI's Gang Task Force (the "FBI Task Force"), with substantial support from the Massachusetts Department of Corrections ("DOC") and gathered evidence of countless acts of violence committed along the East Coast and throughout the streets and prisons of Massachusetts since 2005. At the time of his arrest, defendant was residing with his uncle, Michael Cecchetelli, the Supreme East Coast Regional Overseer of the Latin Kings for the East Coast and is himself a known associate of the Genovese La Cosa Nostra ("LCN") in Springfield.

Defendant is a convicted felon. He was convicted on October 21, 2005 of Conspiracy and Conducting an Illegal Gambling Business out of federal court in Springfield (Docket #05-

30001-MGM), a crime punishable by a term of imprisonment of more than one year. His conviction arose from an investigation involving a large-scale bookmaking operation involving Genovese Crime Family members Alfonso Bruno and Anthony Arillotta. Immediately prior to his arrest in the instant case, defendant had a social media presence and a YouTube channel at www.damienandchicky.com where he and his friend, Damien, opine about all sorts of things, including La Cosa Nostra.

On December 5, 2019, a court-authorized search of the residence where defendant and his nephew resided was conducted and nine rounds of ammunition was located under the mattress in the bedroom where the defendant was sleeping. In addition, a loaded firearm was found next to defendant's bed. Defendant admitted to law enforcement agents that he lived in the apartment, which was also confirmed by the landlord.

## ARGUMENT

The government believes a guideline sentence in this case is appropriate under the sentencing factors enumerated in U.S.S.G. § 3553(a). Defendant has consistently maintained throughout this litigation that his particular prior conviction, conspiring and operating a gambling operation, should be viewed differently than others charged with a violation of Section 922(g)(1)  He is wrong. His prior offense of conviction is not trivial. And this erroneous belief is belied by the evidence from that 2005 case and defendant's own admissions at the time of his plea.

At the time of defendant's 2005 arrest, he was a known associate of the Springfield LCN. The telephone number  provided to bettors by a made member of the Genovese Crime Family in Springfield, Adolfo Bruno, belonged to defendant's girlfriend with whom he resided. Defendant's co-defendant, Anthony Arillotta, was also a member of the Genovese Crime Family.

At the Rule 11 hearing (previously provided to the Court), the prosecutor outlined the defendant's criminal conduct and gave ample color to the offense for which defendant was convicted.  For instance, the prosecutor stated, and the defendant agreed, that the documents seized from his residence, the sports bookmaking operation, totaled approximately $377,000 for only a 25-day period from December 20, 2001 through January 18, 2002.  His gaming activities were no trivial matter but rather part of an elaborate LCN gambling operation.

Moreover, defendant's argument that he possessed the ammunition and firearm to protect himself as a disabled veteran living in a bad neighborhood is undermined by his call to the U.S. Probation Office, shortly after the defendant's arrest in the instant case, wherein he stated that he wanted to hurt someone.  Despite defendant's claim that it was entirely reasonable for him to possess a firearm because he is disabled and lives in a bad neighborhood, this defendant is not a person who can be trusted to possess a firearm without being a threat to society. He disrespected the law in the past and is precisely the type of person that the statute was meant to ban from possessing a firearm.

Despite the letters submitted to the Court by those close to the defendant who profess that he is a changed man, in 2019, he once again chose to associate himself with a dangerous and violent individual, taking up residence with the leader of the Latin Kings in a location filled with firearms and ammunition, and flagrantly violated 18 U.S.C. § 922(g)(1) by himself obtaining a firearm and ammunition.  This is certainly a significant factor when considering defendant's purported claims of lawfulness and rehabilitation. A sentence of incarceration at the low end of

3

the sentencing guidelines, under these circumstances, is sufficient, but not greater than necessary, to serve the purposes of sentencing set forth in § 3553(a)(2).[1]

## CONCLUSION

For all of these reasons, the government believes a sentence of 10 months incarceration is appropriate.

Respectfully submitted,

RACHEL S. ROLLINS
United States Attorney

By: */s/ Laura J. Kaplan*
LAURA J. KAPLAN
Assistant U.S. Attorney
Date: April 15, 2022

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

/s/  Laura J. Kaplan
Laura J. Kaplan
Assistant United States Attorney

Date: April 15, 2022

---

[1] With respect to defendant's claims that he was injured during his time in the military and his subsequent medical history, he has failed to provide proof of same and, thus, the government has no way to verify whether they are, in fact, accurate. This mishap and his subsequent medical history certainly did not prevent him from engaging in criminal conduct in 2005 and now in 2019 and should not preclude punishment for the same. Moreover, the Bureau of Prisons is more than able to deal with defendant's obesity and covid concerns.